## Richmond

BOILER BRICK AND REFRACTORY CO., INC. v. MARYLAND CASUALTY COMPANY.

June 16, 1969.

Record No. 6942.

Present, All the Justices.

*Harry L. Thompson* (*Minor, Thompson, Savage and Smithers*, on brief), for plaintiff in error.

*Buford M. Parsons, Jr.* (*May, Garrett, Miller & Newman*, on brief), for defendant in error.

SNEAD, J., delivered the opinion of the court.

Boiler Brick and Refractory Company, Inc., plaintiff, instituted an action at law against Maryland Casualty Company, defendant, seeking to recover a judgment for $10,000 under a policy of liability insurance issued to it by Maryland Casualty. Coverage under the policy was denied by Maryland Casualty, and all questions of law and fact were submitted to the trial court without the intervention of a jury. By order entered October 12, 1967 the court rendered judgment for defendant. The error assigned by Boiler Brick was that the judgment is contrary to the law and the evidence. We granted plaintiff a writ of error.

The facts are not in material dispute. Southeastern Container Corporation, owner of certain real property in Martinsville, Virginia, contracted with J. E. Green Company, a general contractor, to erect a plant on its land. Green contracted with Prillaman and Pace, Inc., mechanical contractors, for the furnishing and installation of a boiler, burner, and all mechanical hook-ups in the boiler room. Prillaman and Pace entered into a contract with Boiler Brick for the purchase of a burner. Under the agreement Boiler Brick was to furnish "start-up service" after the burner had been installed and connected to the boiler by Prillaman and Pace. On January 25, 1963, about two days prior to the completion of the plant the boiler exploded while the burner was being started, for the first time, by Boiler Brick's employee.

Southeastern Container notified Green, the general contractor, that it would not accept a repaired boiler as contract performance and threatened claims for loss of production against Green if steam was not provided as soon as possible. In order to avoid delay Green had the boiler repaired at its own expense ($17,375.14) and put it into operation until a second boiler could be erected. Repairs to the boiler room cost Green $2,318.61 and the cost of installation of a second boiler was $32,225.27.

Southeastern Container accepted the second boiler as contract performance but paid Green only the original contract price. Later Green sold the repaired boiler to Southeastern Container for $12,500. Green was a named insured under a liability policy issued by United States Fidelity & Guaranty Company (USF&G). This insurance company paid Green $34,542.88 for the repairs made to the boiler room and for the installation of the second boiler, but refused to pay the cost of repairs to the first or exploded boiler.

Subsequently USF&G instituted a subrogation action against Boiler Brick in the United States District Court at Danville, Virginia, to recover a judgment for $34,542.88, the amount it paid Green. In its answer to the complaint Boiler Brick denied liability and denied that the cost of installing the second boiler was the "lawful measure of its damages". At the time of the explosion there was in effect a "Comprehensive General Liability Policy" which Maryland Casualty had issued to Boiler Brick. Both Boiler Brick and Maryland Casualty, having separate counsel, defended the case. Maryland Casualty, which denied coverage, defended under the usual "non-waiver" agreement. After much pretrial activity the claim was compromised for $12,318.61 and the case was dismissed agreed with prejudice.

Boiler Brick paid the entire sum to USF&G, but Maryland Casualty later reimbursed Boiler Brick $2,318.61, "being the portion of USF&G's claim for damage to the boiler house". It is agreed that the settlement was "legally advisable" and "reasonable as to amount". Maryland Casualty having denied that its policy covered the balance ($10,000) paid in the settlement, Boiler Brick instituted this action. The sole issue before us is whether Boiler Brick's claim is covered by the policy.

The parties have agreed that two clauses contained in Maryland Casualty's policy, "Coverage B" and "Exclusion (h)", control the issue here involved. By "Coverage B" Maryland Casualty agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident." "Exclusion (h)" states that "This policy does not apply: * * * under coverage B, to injury to or destruction of * * * property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control, * * *". For purposes of this appeal Boiler Brick concedes its control of the first boiler at the time of the explosion.

It is Boiler Brick's position that under "Coverage B" its liability for all elements of damage arising out of the explosion is covered except for that excluded by "Exclusion (h)" and that only the repairs to the first boiler would be excluded thereby since that was the only property under the care, custody or control of Boiler Brick to suffer any damage. It contends in substance that the source of its liability for the cost of installing the second boiler was not the injury to the first boiler, which was repairable, but arose from contractual commitments which entitled Southeastern Container to demand a new boiler. Further, since that cost was not for "injury to * * * property" but was *because* of injury to property it is not excluded and Boiler Brick is therefore covered under "Coverage B". We agree that Boiler Brick's liability for the second boiler, if any, arises primarily out of contractual obligations, but "Coverage B" does not extend coverage to such liability. In our view "Coverage B" covers tort liability for "damages because of injury to or destruction of property", not damages resulting from assumed or imposed contractual liability.

The record shows that USF&G's claim of $34,542.88 against Boiler Brick, which was settled for $12,318.61, was only for the repairs made to the boiler room and for the installation of the second boiler. In a

tort action Boiler Brick could not properly be held liable for the total cost of installing the new boiler to replace the repairable boiler. Of the items represented by the settlement figure only the cost of repairs to the boiler room would be recoverable in a tort action. Hence, only that amount, which was paid by Maryland Casualty, falls under "Coverage B". The balance of $10,000, the amount here in controversy, is in the nature of contractural damages and it cannot be said that Maryland Casualty, by "Coverage B", extended coverage to liability resulting from special contractual obligations imposed on Boiler Brick or entered into by Boiler Brick or third parties. Boiler Brick's liability for damages in the nature of those sued for is beyond the scope of the provision under which it seeks to impose liability on Maryland Casualty. Therefore, the judgment appealed from is

*Affirmed.*