The CONTINENTAL INSURANCE COM-
PANY, Appellant,

v.

Charles W. BUSSELL, d/b/a Alaska Bussell
Electric Company, Appellee.

No. 1517.

Supreme Court of Alaska.

June 26, 1972.

Kenneth P. Jacobus, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellant.

William J. Bailey and William M. Bankston, of Croft & Bailey, Anchorage, for appellee.

Before BONEY, C. J., and RABINOWITZ, CONNOR and BOOCHEVER, JJ.

BOOCHEVER, Justice.

Charles W. Bussell operates an electrical contracting business which is known as Alaska Bussell Electric Company. He entered into an employment agreement with the International Brotherhood of Electrical Workers which required Bussell to

> provide life insurance coverage for each employee while traveling for the employer in an aircraft in the amount of Twenty-Five Thousand Dollars ($25,000.00), and in the event of employee's death, payable to his estate.

After entering into that contract, he purchased a liability insurance policy from the Continental Insurance Company.

Dennis Young, an employee of Bussell and a member of the union, was killed in an airplane crash while traveling in the course of his employment. His executrix brought suit against Bussell for recovery of the $25,000 "death benefit" under the union contract. He filed a third party complaint against Continental and its agent, Dawson and Company of Alaska, Inc., alleging *inter alia,* that Continental had denied that the policy covered the executrix's claim and had refused to defend the action. Bussell sought a declaratory judgment as to the coverage of the policy and Continental's liability thereunder.[1] In its answer Continental denied that the policy in question covered the obligation upon which the executrix's claim was based.

Continental moved for summary judgment as to Bussell's first claim which alleged that the policy encompassed his liability for failure to provide life insurance under the terms of the union contract. Bussell opposed Continental's motion and he, himself moved for summary judgment on the same issue. The superior court by Memorandum of Decision and Judgment denied Continental's motion for summary judgment and granted that of Bussell. It

---

1. The second and third "claims" stated in the complaint were against Dawson as well as Continental. They are based on alleged agreements to furnish Bussell all insurance required by his business and on negligent failure to secure such policies. These claims are not in issue on this appeal.

is from that judgment that Continental now appeals.

The policy contained three "Coverage Parts" entitled respectively: Comprehensive Automobile Liability Insurance, Comprehensive General Liability Insurance and Contractual Liability Insurance. The automobile part obviously does not provide the coverage here in issue.

■ The Comprehensive General Liability part specifies:

COVERAGE A—BODILY INJURY LIABILITY

COVERAGE B—PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage to which this insurance applies, caused by an occurrence . . .

Immediately following the above provision there appeared a section entitled "Exclusions" which stated:

This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract . . . .[2]

Since the union contract is not an "incidental contract," Bussell's potential liability under that contract is excluded from the coverage afforded by the Comprehensive General Liability part. We therefore must focus on the Contractual Liability[3] Insurance provision in order to resolve the issue raised by this appeal. That part specifies:

I. COVERAGES — CONTRACTUAL BODILY INJURY LIABILITY

CONTRACTUAL PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured *all sums which the insured,* by reason of contractual liability assumed by him under any written contract of the type designated in the schedule for this insurance, *shall become legally obligated to pay as damages because of*

*bodily injury* or

property damage

*to which this insurance applies,* caused by an occurrence . . . . [Emphasis added.]

Under the heading "Designation of Contracts" in the "schedule" referred to above, there was typewritten: "all written contracts provided under this coverage port[ion]."

■ Before addressing ourselves further to the issue of the policy's coverage, however, we must determine the source of Bussell's anticipated liability to the estate of Dennis Young. The estate's claim for relief is based on the theory that Young was a third party beneficiary of the union-Bussell contract. We must therefore examine the nature of Bussell's obligation under that contract. Bussell has urged upon us a theory of contract construction whereby he may perform his contractual duty to purchase life insurance either by procuring the requisite policy or by responding in damages for his failure to do so. Contrary to the plain meaning of the contract language he would thus have us permit him to become, in effect, a self-insurer.

---

2. The policy defined "incidental contract" as "any written (1) lease of premises, (2) easement agreement . . . (3) undertaking to indemnify a municipality . . . (4) sidetrack agreement, or (5) elevator maintenance agreement."

3. The policy defines "contractual liability" as "liability expressly assumed under a written contract or agreement; provided, however, that contractual liability shall not be construed as including liability under a warranty of the fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner . . ."

When Bussell convenanted to procure a life insurance policy for the benefit of his employees he undertook a duty which could be discharged only by the purchase of such a policy. The union had the right prior to Young's death to insist upon specific performance by Bussell of the obligation to procure the policy rather than await the eventual result of a damage suit based on the breach of the union contract.[4] The union was not required to rely on Bussell's financial responsibility as opposed to that of a life insurance company. Conversely, had Bussell in good faith secured an appropriate policy from a life insurance company, he would have complied with his duty under the union contract regardless of the financial ability of such company to pay the executrix in accordance with the policy terms. Bussell, under the contract, had no direct obligation to pay the $25,000 as damages.

■ In the event, however, that Bussell failed to discharge his duty to obtain a life insurance policy, the estate of Young would have the right to sue for damages for breach of the covenant to procure the life insurance policy. Any judgment which might be obtained in such a suit would be based on the breach of the duty which Bussell undertook upon entering into the contract with the union. As stated in the RESTATEMENT OF CONTRACTS:

> A distinction exists between the discharge of a primary duty created by the formation of a contract and that of the duty to make compensation in damages, which is the only remedial duty enforceable for breach of most contractual duties . . . . In this chapter the ex-

pression 'contractual duty' is confined to the primary duty, and the term 'duty to make compensation' is used to express the secondary duty.[5]

Young, as a third party beneficiary of the union contract, was entitled to performance by Bussell of his contractual duty to secure the life insurance. Bussell's contractual duty was established at the time the contract was made. A breach of that duty would change his relationship with Young and give rise to the obligation to respond in damages for the breach. There is no justification, however, for adopting Bussell's argument that this obligation to respond in damages was contemplated by the parties to be an alternative to the primary obligation.[6] It is our conclusion that any damages for which Bussell may be held liable in the Young-Bussell suit must arise from his breach, if any, of the contract to procure the life insurance.

We must next determine whether or not the Contractual Liability Insurance part of the policy which Bussell purchased from Continental covered damage judgments suffered by him due to his breach of contractual duties.

■ The Contractual Liability Insurance portion of the policy must be viewed in conjunction with the other sections, as we are bound by statute[7] to construe the policy by the entirety of its terms. We find it unnecessary to specify in detail all that the contractual liability section may indeed cover, since such coverage is, in any case, limited to bodily injury or property damage liability assumed by the insured. The general purpose for such contractual liability coverage is set forth in 1 Long,

4. *Cf.* Allen v. Allen, 201 Okl. 1, 201 P.2d 786 (1948) ; Annot. 12 A.L.R.2d 983 (1950).

5. Restatement of Contracts § 385, comment a (1932) ; *see also* 1A A. Corbin, Contracts § 182, at 144 (1963) ; 1 S. Williston, Contracts § 130A, at 538 (3d ed. 1957).

6. 1A A. Corbin, Contracts § 182, at 144 (1963).

7. AS 21.42.230 provides:
 *Construction of policies.* Each insurance contract shall be construed according to the entirety of its terms and conditions as set out in the policy and as amplified, extended, or modified by a rider, endorsement, or application which is a part of the policy.

The Law of Liability Insurance § 10.19 as follows:

> Public liability forms and owners and contractors liability forms of insurance generally exclude liability assumed by the insured under any contract or agreement, except incidental contracts defined in the policy. Hence, liability assumed by the insured under *a hold harmless agreement* is outside the scope of the coverage and must be insured specifically.
>
> *Coverage for this risk* is afforded by the standard contractual liability coverage part which is available for attachment to the basic liability policy jacket. [Emphasis added.]

 Neither of the coverage portions in issue applies to damages arising from an insured's breach of a contractual duty.[8] There is no language in any section of the policy which even tangentially alludes to coverage protecting against breaches of contract. Nor does the "schedule" which was attached to the policy contain any language expanding its coverage beyond that provided in the body of the policy. It is our conclusion that the language of the policy does not reflect any intention on the part of either Bussell or Continental to include losses due to breach of contractual duties among its coverages.

The court below erroneously found the language of the contract alone to be a sufficient basis for awarding summary judgment to Bussell. As discussed above, the language itself does not support that finding. This ruling, however, does not end our analysis.

 We have held that insurance policies are to be looked upon as contracts of adhesion for the purpose of determining the rights of the parties thereto.[9] In so construing a policy we do not require as a condition precedent that ambiguities be found in the policy language. All that is required is that the parties be of such disproportionate bargaining power that the insured could not have negotiated for variations in the terms of the standard policy.[10] Thus the finding that a policy is a contract of adhesion depends not upon its language, but upon the relationship of the parties.[11] The result of such a finding is that the policy is construed so as to provide that coverage which a layman would reasonably have expected given his lay interpretation of the policy's terms. If such a construction would give rise to a reasonable expectation that the policy now before us would provide life insurance coverage or, in the alternative, coverage for Bussell's breach of contract to procure a life insurance policy, the decision of the trial court must stand undisturbed.

At the time Bussell purchased the policy he knew of his obligation under the union contract to procure life insurance. The Continental policy's coverage portions uniformly refer to bodily injury and property damage liability and nowhere use language which a layman could reasonably construe as providing life insurance. The policy itself is entitled "Liability Insurance Policy" as contrasted with the title of a life insurance policy. Equally absent is language which a layman might reasonably expect to provide indemnification should he breach a contractual duty.

Bussell may still have recourse against Continental and Dawson under his other claims based on an alleged agreement to procure all insurance required by his business or on an alleged negligent failure to procure such policies; but as to the subject claim founded on the policy, the decision of the trial court is reversed. The case is

8. *Cf.* Silva & Hill Constr. Co., Inc. v. Employers Mut. Liability Ins. Co., 12 Cal. App.3d 1086, 91 Cal.Rptr. 365 (1971) (vacated on other grounds, 19 Cal.App.3d 914, 97 Cal.Rptr. 498 (1971)); Maryland Cas. Co. v. Waumbec Mills, Inc., 102 N.H. 200, 152 A.2d 619, 623 (1957).

9. National Indem. Co. v. Flesher, 469 P.2d 360 (Alaska 1970).

10. *See* R. Keeton, Insurance Law Rights at Variance With Policy Provisions, 83 Harv.L.Rev. 961, at 963 (1970).

11. *Id.* at 969.

remanded with instructions that summary judgment be entered in favor of the Continental Insurance Company as to the First Claim of the Third Party Complaint and that further proceedings be held with reference to the remaining claims set forth in the Complaint and Third Party Complaint.

ERWIN, J., not participating.