**CM, INC., a corporation, Appellant,**

v.

**The CANADIAN INDEMNITY COMPA-NY, a corporation, Appellee,**

**Robert LeFleur, Acting as Special Administrator for the Estates of Richard David Bauer and Timothy Breneman, Appellant, Homestake Mining Company, a corporation, Appellant,**

**Donald Legault, Appellee.**

**No. 80–1173.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1980.

Decided Dec. 18, 1980.

Joseph M. Butler, Rapid City, S. D., argued, Bangs, McCullen, Butler, Foye & Simmons, James W. Olson, Wilson, Bottum, Olson, Goodsell & Nash, Rapid City, S. D., A. P. Fuller, Amundson & Fuller, Lead, S. D., Gene R. Bushnell, Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, S. D., for appellants.

Paul L. Gingras, Minneapolis, Minn., argued, Robins, Davis & Lyons, Mark J. Feinberg, Robert M. Wattson, Minneapolis, Minn., Banks & Johnson, Rapid City, S. D., for appellees.

Before LAY, Chief Judge, and BRIGHT and McMILLIAN, Circuit Judges.

LAY, Chief Judge.

The issue presented on appeal is whether an exclusionary clause of a comprehensive business liability policy which provides coverage for contractual liability is properly construed to exclude coverage for an indemnity agreement between the insured and a third party whose direct liability is based on injuries caused to employees of the insured. The district court, the Honorable Andrew W. Bogue presiding, granted a declaratory judgment in favor of the insurer finding that the coverage was excluded. We must respectfully disagree. We reverse and remand for further proceedings.

CM, Inc. is a Montana corporation with its principal place of business in Montana, and is a wholly owned subsidiary of a Canadian corporation, Canadian Mine Services, Ltd. Canadian Indemnity Company, a Canadian corporation, sold the policy in question to Canadian Mine Services through an insurance agency located in Vancouver, British Columbia. The policy was delivered in Vancouver and the premiums were paid there. The policy designated the parent and CM as named insureds.

On March 26, 1974, CM contracted with Homestake Mining Company, a South Dakota corporation, to perform underground mine development work. The contract had a hold harmless provision that provided:

> Contractor shall at all times and hereby does indemnify and hold harmless Homestake on account of any and all claims, damages, losses, litigation, expenses, counsel fees and compensation arising out of injury (including death) sustained by or alleged to have been sustained by the Contractor, its subcontractors and materialmen, officers, agents, servants and employees of Homestake or the Contractor, its subcontractors and materialmen, and from injury (including death) sustained by or alleged to have been sustained by the public, servants, employees, or agents of the public, any or all persons on or near the work, or by any other person or property, real or personal, caused in whole or in part by the acts or omissions of the Contractor, its subcontractors or materialmen, or anyone directly or indirectly employed by them or any of them while engaged in the performance of the work herein.

During the work performed at the Homestake mine, two CM employees, Breneman and Bauer, were killed when a crosshead[1] malfunctioned and caused the men to fall to the bottom of the mine shaft.

Robert LaFleur, the special administrator of the employees' estates, brought suit against Homestake Mining for the wrongful deaths of the two employees. Homestake filed a third party complaint against CM, Inc. under the indemnity clause. CM tendered its defense to Canadian Indemnity which denied coverage and refused to defend.

CM assumed the defense of the actions and, after advising Canadian Indemnity of the proposed settlement, settled the cases. Pursuant to the settlement agreement, judgments were entered against Homestake in the primary suit and against CM in the third party action. Homestake's judgment against CM on the indemnity agreement was assigned to the administrator of the estates with the stipulation that the judgment could only be satisfied out of the general liability insurance policy between CM and Canadian Indemnity.[2] Thereafter CM instituted this declaratory judgment action which resulted in a judgment finding that the coverage was excluded.

*The Policy Agreements.*

The issue in this case involves the construction of the insurance policy between CM and Canadian Indemnity. The policy's insuring agreement provides:

TO PAY ON BEHALF OF THE
INSURED

1. Bodily Injury or Illness–All sums resulting from the liability imposed by law upon the Insured for loss or damage because of bodily injury to or the illness or death of any person or persons.

．　　．　　．　　．　　．

3. Contractual Bodily Injury or Illness–All sums resulting from the liability imposed by law upon any third party for loss or damage because of bodily injury to, or the illness or death of any person or persons where the Insured has incurred liability therefor under the terms of an agreement wholly in writing.

Canadian Indemnity argues that exclusion 2, as amended by endorsement 3, clearly excludes coverage. Endorsement 3 provides:

IT IS HEREBY UNDERSTOOD AND AGREED that Exclusion # 2 of this Policy is amended to read as follows:

[The coverage given by this policy does not apply to:]

2. The liability imposed upon the Insured by any Workmen's Compensation Plan or Agreement or for bodily injury to or the illness or death of any employee of the Named Insured while engaged in the business operations of the Insured, other than where an Insured has made contributions to the Workmen's Compensation Plan on behalf of an employee and where protection of the Act is denied. . . .

*Conflict of Laws.*

The parties concede there exists no controlling case in either Canada or South Dakota interpreting similar insurance clauses. The district court applied British Columbian law as governing the rules of construction. This is challenged on appeal and CM urges that South Dakota law should govern. Resolution of conflict rules are necessary only when the laws of the various jurisdictions differ. Both the Supreme Court of Canada and the Supreme Court of South Dakota have adopted rules of construction that require exclusionary provisions of insurance contracts to be narrowly interpreted. The Supreme Court of Canada, in *Cooperative Fire & Casualty Co. v. Twa*, [1974] 1 W.W.R. 467 (Ritchie, J.), stated the general rule is:

The basis for [construing contract language in favor of the insured is] that the

---

1. A crosshead is an elevator–type machine used to raise and lower men into a mine.

2. The stipulation also provided that the judgment could be satisfied out of the workmen's compensation policy CM had with Employers Insurance of Wausau. This, of course, is of no concern in this lawsuit.

insurer, by such clauses, seeks to impose exceptions and limitations to the coverage he has already described and, therefore, should use language that clearly expresses the extent and scope of these exceptions and limitations and, in so far as he fails to do so, the language of the coverage should obtain.

*Id.* at 469 (quoting *Indemnity Insurance Co. v. Excel Cleaning Service,* [1954] S.C.R. 169, 179).

The South Dakota Supreme Court has said, "We are dealing here with a term of exclusion, and thus we apply a strict construction to the term." *Novak v. State Farm Mutual Automobile Insurance Co.,* 293 N.W.2d 452, 455 (S.D.1980). Similarly, this court in *Roach v. Churchman,* 431 F.2d 849, 851 (8th Cir. 1970), a diversity case applying Iowa law, observed these principles and stated, "[T]he well–settled general rule that exceptions, limitations and exclusions to insuring agreements require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations upon that coverage in clear and explicit terms." Since we find no difference in the case law governing construction of the policy in the present case, we see no purpose in an exacting analysis as to which law applies.

*Policy Interpretation.*

There is no dispute that paragraph 3 of the insuring agreement provides coverage for CM's contractual bodily injury liability. Without exclusion 2 the insurer must provide coverage as to the indemnity agree-

ment between its insured, CM, and Homestake. In excluding coverage, Canadian Indemnity relies solely on the language which excludes coverage for the "liability imposed upon the Insured . . . for bodily injury to . . . or death of any employee of the Insured while engaged in the business operations of the Insured." [3]

█ It is fundamental that the language of an insurance policy must be construed according to its plain and ordinary meaning and must not be given a forced construction. *Grandpre v. Northwestern National Life Insurance Co.,* 261 N.W.2d 804, 807 (S.D.1977). Concomitant to this rule, we observe if the language of the exclusion clearly and unambiguously excludes coverage for CM's contractual liability to third parties for injuries to its employees, this court must enforce the exclusion. *See Johnson v. United States Fire Insurance Co.,* 586 F.2d 1291, 1295 (8th Cir. 1978); *Novak v. State Farm Mutual Automobile Insurance Co.,* 293 N.W.2d 452, 454 (S.D. 1980).

The district court found this language of the exclusionary clause to be unambiguous. It observed that the only reasonable interpretation of this language is that it excludes coverage of any claims against CM by its employees whether the claims are brought directly or indirectly. We also find the insuring agreement and exclusion to be unambiguous; however, we disagree with the district court that the coverage was intended to exclude CM's contractual liability.[4]

█ Applying the rule of construction that exclusionary clauses are read narrowly,

---

**3.** Canadian Indemnity concedes that the estate's underlying liability claim is not based upon any workmen's compensation plan or agreement. Therefore, Canadian Indemnity does not rely upon that language of exclusion 2 as a basis for its denial of coverage.

**4.** The insurance contract cases relied upon by both parties, although helpful in observing parallel constructions, provide limited assistance because of their varying terms. A typical insuring agreement was involved in *Indemnity Ins. Co. of N. America v. California Stevedore & Ballast Co.,* 307 F.2d 513 (9th Cir. 1962). The agreement's language was:

> To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom sustained by any person.

*Id.* at 515 n.1.

*Accord Parfait v. Jahncke Service, Inc.,* 484 F.2d 296, 306 (5th Cir. 1973). "All sums" is construed to provide coverage for both direct and contractual liability. The contract in *California Stevedore* had an exclusion clause which read:

> This policy does not apply under coverage A, *except with respect to liability assumed under written contract,* to bodily injury or

we find the exclusion was intended to apply only to direct actions brought by employees against CM and not to any obligation assumed under contract. We think this is clear for several reasons. First, the insuring agreement provides coverage under paragraph 1 for "bodily injury to . . . any person." Exclusion 2 specifically relates to "liability imposed . . . for bodily injury . . . of any employee." It is clear that the coverage under paragraph 1 is limited by the exclusionary agreement. Coverage under paragraph 3 of the insuring agreement, however, relates specifically to "contractual bodily injury." The exclusionary agreement does not speak in these explicit terms.

Second, we observe the wording of exclusion 2 is nearly identical to that of paragraph 1 of the insuring agreement but significantly different from that of paragraph 3. Paragraph 1 covers "liability imposed by law *upon the Insured*" and exclusion 2 excludes coverage of "liability imposed *upon the Insured.*" Paragraph 3, on the other hand, covers liability incurred by the Insured that results from "liability imposed by law *upon any third party.*" Considering the difference in language between exclusion 2 and paragraph 3 we conclude that exclusion 2 was not intended to exclude CM's contractual liability to third parties for job–related injuries suffered by CM's

> sickness, disease or death of any employee of the insured while engaged in the employment of the insured, other than a domestic employee for whose injury benefits are not payable or required to be provided under any workmen's compensation law; . . .

307 F.2d at 515 n.1 (emphasis in original). The Ninth Circuit in *California Stevedore* interpreted the exemption from the exclusion to include the insured's indemnity liability to a shipowner on whose ship the insured's employee was injured and thus the liability was a covered loss. *Id.* at 517–18.

In *Parfait,* the Fifth Circuit held that the exclusionary clause specifically excluded coverage in the same terms found in the insuring agreement set forth above. The policy excluded coverage of "*bodily injury* to any employee of the *insured* arising out of and in the course of the employment . . . ." 484 F.2d at 306 (emphasis in original). The court held the insurance policy could only be interpreted to cover bodily injury of non–employees. *Id.* Cf. *Larson Constr. Co. v. Oregon Auto. Ins. Co.,* 450 F.2d 1193, 1196 (9th Cir. 1971) (language not sufficiently identical to remove coverage of employees).

*Utica Mut. Ins. Co. v. Central Vt. Ry.,* 133 Vt. 292, 336 A.2d 200 (1975), provides another parallel construction but again the policy has somewhat differing terms. There, Peru Associates was a contractor on a bridge construction project owned by Central Vermont. In the construction contract Peru agreed to indemnify Central Vermont. An employee of Peru sued Central Vermont for injuries he suffered on the job and Central Vermont impleaded Peru for indemnity. Peru's liability insurance carrier, Utica Mutual, started a declaratory judgment action to determine its obligation under the contract.

The contract between Peru and Utica Mutual provided:

> [T]he company will pay on behalf of the insured all sums which the insured, by reason of contractual liability, assumed by him under a contract designated in the schedule for this insurance, shall become legally obligated to pay as damages because of
> Y. bodily injury . . . .

*Id.* at 202.

Without any exclusionary language, Utica Mutual would be liable for Peru's contractual liability to indemnify Central Vermont for its liability to Peru's injured employee. Utica Mutual, however, relied on exclusion (d) which provided that the insurance was inapplicable:

> [T]o any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation, or disability benefits law, or under any similar law; . . . .

*Id.*

The court held that the exclusionary clause applied to claims by employees against the insured employer under a workmen's compensation law and did not cover claims by a third party for contractual indemnity. The court held that the language of exclusion (d) differentiated between liability imposed by a workmen's compensation law and other types of contractual liability. *Id.*

Utica Mutual argued that Central Vermont's claim is based upon a personal injury and therefore comes within exclusion (d). *Id.* Canadian Indemnity makes a nearly identical argument; exclusion 2 is meant to exclude coverage of an employer's liability to its employees and since the third party's claim of indemnity is based on this type of liability there is no coverage. The Vermont Supreme Court perfunctorily dismissed Central Vermont's argument by saying that even if the language can be read this way, it is thus susceptible to two different interpretations so that it must be read in favor of the insured. *Id.*

employees which is included in the coverage of paragraph 3.

Third, other language in exclusion 2 and paragraph 3 also supports this conclusion. Exclusion 2 speaks of liability "imposed" upon the Insured, language identical to that in paragraph 1. The language of paragraph 3, however, relates to liability "incurred" by the Insured for breach of a contractual duty to indemnify third parties for their liability for injury to any person. Webster defines "impose" to mean, "to make, frame, or apply as compulsory," Webster's New Third International Dictionary (unabridged) 1136 (1966), while defining "incur" to mean to "become liable or subject to: bring down upon oneself." *Id.* at 1146. Exception 2 defeats coverage of liabilities which CM is *forced* to assume while paragraph 3 covers liabilities which CM *voluntarily* assumes by contract. This difference in language also indicates that exclusion 2 was not intended to exclude coverage provided by paragraph 3.

Canadian Indemnity argues that exclusion 2 should be construed so as to exclude coverage of any liability CM may have for injury to its employees, whether it be direct or indirect liability. Assuming this is a reasonable interpretation, it is obvious that it is not the only interpretation. Under Canadian as well as South Dakota law, the rule is uniformly applied that if a contract is ambiguous, the ambiguity is construed against the insurer. *See Dakota Block Co. v. Western Casualty & Surety Co.*, 132 N.W.2d 826, 830 (S.D.1965); *Pentagon Construction Co. v. United States Fidelity & Guarantee Co.*, [1977] I.L.R. 3124 (B.C.C.A.).

We conclude that judgment should be entered in favor of the insured finding coverage of the indemnity agreement.

The cause is reversed and remanded for further proceedings.[5]

BRIGHT, Circuit Judge, concurring:

I concur in the result on the ground that the policy language of the exclusion is am-

biguous and should be construed against the insurer as discussed at 708.

---

5. Although this decision resolves the coverage question it is our understanding that there may now be other issues necessary to be resolved before final judgment.