**ACTION ADS, INC., a Wyoming Corporation; Robert Shriner, and Ernestine Shriner, Appellants (Plaintiffs),**

v.

**GREAT AMERICAN INSURANCE COMPANY, Appellee (Defendant).**

No. 84–18.

Supreme Court of Wyoming.

Aug. 8, 1984.

E. James Burke of Hanes, Gage & Burke, P.C., Cheyenne, for appellants.

Dennis M. Hand of Hand, Hand & Hand, P.C., Casper, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

This appeal concerns the coverage afforded by the general-liability insurance provision of a "Business Protector Policy" issued by appellee Great American Insurance Company to appellant Action Ads, Inc.

The district court determined that coverage did not extend to the insured's liability arising from breach of contract and awarded summary judgment in favor of the insurance company.

We will affirm.

## FACTS

Appellant, Action Ads, and one of its salesmen, Kenneth Judes, entered into an employment contract which required appellant to provide a medical insurance program for Judes. Action Ads failed to furnish any insurance coverage. When Judes sustained serious injuries in a gas explosion in a mobile home, he brought suit against his employer for damages resulting from breach of the obligation to obtain insurance under the employment contract. Judes' favorable judgment in the district court was reversed by this court on the ground that the agreement to provide medical insurance was not sufficiently definite and certain to constitute an enforceable contract. *Action Ads, Inc. v. Judes*, Wyo., 671 P.2d 309 (1983).

Shortly after receiving Judes' complaint, Action Ads notified its liability insurer, appellee Great American Insurance Company, and requested that Great American defend the action and pay any resulting judgment in favor of Judes. Action Ads relied on the coverage clause of the comprehensive general-liability insurance issued by Great American as part of its "Business Protector Policy":

"The company will pay on behalf of the insured *all sums which the insured shall become legally obligated to pay as damages because of*

A. *bodily injury* or

B. property damage

to which this insurance applies, caused by an occurrence, *and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury* or property damage, even if any of the allegations of the suit are groundless, false or fraudulent * * *." (Emphasis added.)

The policy defines "occurrence" as

" * * * an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

Great American refused to defend Action Ads, maintaining that the liability policy did not cover damages arising from breach of contract.

Action Ads, its president and its vice-president initiated this action against Great American prior to this court's decision in *Action Ads, Inc. v. Judes*, supra. After our reversal of the judgment against appellants in that suit, they continued to maintain their claim against Great American for attorney's fees, injury to business reputation, mental anguish and suffering of the corporate officers, and punitive damages.

Both parties filed motions for summary judgment. The district court granted Great American's motion, ruling that the comprehensive general-liability policy extended to liability imposed by law for torts and not to damages for breach of contract. The trial court held that Great American had no duty to defend the suit brought by Action Ads' former employee, since

" * * * [t]he liability of Action Ads was 'because of' a breach of contract despite the fact that the amount of damages would necessarily be determined by medical expenses related to a bodily injury."

Appellants ask us to review the single issue that determined this case before the trial court: Whether the liability policy encompassed Action Ads' potential liability for failure to provide medical insurance under the terms of its employment contract with Judes. Appellants take the position that the language in the coverage provision is sufficiently broad to include an insured's liability arising from breach of contract.

## SCOPE OF LIABILITY COVERAGE

Courts universally have interpreted liability-coverage provisions, identical to that found in appellants' policy, as referring to

liability sounding in tort, not in contract. *International Surplus Lines Ins. Co. v. Devonshire Coverage Corp.,* 93 Cal.App.3d 601, 155 Cal.Rptr. 870 (1979), is a representative case. There Devonshire, a general-insurance agent, had issued a $500,000 fire-insurance policy on a clubhouse. Under a separate contract with the insured, Devonshire had agreed either to obtain additional insurance or to indemnify the insured for damages in excess of $500,000. Devonshire failed to obtain the extra insurance. The clubhouse burned, and the insured obtained a judgment against Devonshire for more than $800,000. Devonshire sought to hold its liability-insurance carrier responsible for that judgment. In ruling for the insurer, the California Court of Appeals interpreted a comprehensive-liability provision, identical to the coverage provision in the present case, as extending to liability based only on tort claims:

> "The phrase 'legally obligated to pay as damages' as used in the * * * [liability] policy, is synonymous with 'damages for a liability imposed by law.' That latter phrase has been uniformly interpreted as referring to a liability arising ex delicto as distinguished from ex contractu. (*Ritchie v. Anchor Casualty Co.*[, 135 Cal.App.2d 245, 286 P.2d 1000 [ (1955) ].]) The theory that Devonshire assumed a liability * * * for which * * * [its liability insurer] provided coverage cannot be sustained by the terms of the policy or applicable law." 155 Cal.Rptr. at 875.

The Supreme Court of Alaska considered a factual situation similar to the case at bar in *Continental Insurance Company v. Bussell,* Alas., 498 P.2d 706 (1972). In that case, an employer agreed in a union contract to purchase life insurance for his employees who traveled in aircraft in the course of business. The employer purchased a liability-insurance policy, but failed to acquire the promised life insurance. When an employee perished in an airplane crash, the estate sued for the $25,-000 "death benefit" under the union contract. The employer filed a third-party claim against Continental Insurance Company, his liability insurance carrier. The Alaska Supreme Court held that Continental Insurance Company had no obligation to defend the employer or to pay the $25,000 death benefit. In interpreting the standard comprehensive general-liability clause with which we are concerned, as well as a contractual-liability provision not pertinent here, the court said:

> "Neither of the coverage portions in issue applies to damages arising from an insured's breach of a contractual duty. There is no language in any section of the policy which even tangentially alludes to coverage protecting against breaches of contract." 498 P.2d at 710.

Other cases reaching the same conclusion include *Olympic, Inc. v. Providence Washington Insurance Company of Alaska,* Alas., 648 P.2d 1008 (1982); *Kisle v. St. Paul Fire and Marine Insurance Company,* 262 Or. 1, 495 P.2d 1198 (1972); *Boiler Brick and Refractory Co. v. Maryland Casualty Co.,* 210 Va. 50, 168 S.E.2d 100, 102 (1969).

Rowland H. Long in his treatise, The Law of Liability Insurance, summarized the uniform judicial interpretations of standard liability-coverage provisions found in current and earlier policies:

> "The promise in the insuring provision of the earlier liability insurance policies is to pay all sums by reason of liability 'imposed upon the insured by law for damages.' In more recent editions of the policy, the promise is to pay all sums 'which the insured shall become legally obligated to pay as damages.' Damages 'imposed by law' and damages which a person is 'legally obligated' to pay express the same thought. The law imposes upon the insured a liability to pay damages for bodily injuries or damage to property caused by his carelessness and arising out of the ownership, maintenance, care, custody, or use of property. This is the liability upon which the insurer agrees 'to pay on behalf of the insured all sums which the insured shall become legally obligated to pay.' This provision limits the insurer's obligation. 'Liability imposed by law for damages' or damages which the insured becomes 'legally obli-

gated' to pay exclude the concept of liability which the insured may have voluntarily assumed * * *." 1 Long, Law of Liability Insurance, § 1.10, p. 1–25.

See also 7A Appleman, Insurance Law and Practice (Berdal ed.), § 4493, pp. 55–56 (1979).

Appellants assert that such a narrow reading of the liability-coverage clause cannot be reconciled with the expansive protection contemplated by the policy titles "Business Protector Policy" and "Comprehensive General Liability Insurance." The coverage clause, not the policy titles, controls, however, and these admittedly broad labels cannot override the express provisions of the coverage paragraph so as to protect the insured against all possible risks. *Fresno Economy Import Used Cars, Inc. v. United States Fidelity & Guaranty Company, Inc.*, 76 Cal.App.3d 272, 142 Cal.Rptr. 681, 686 (1977).

We conclude that the coverage clause at issue in the present case encompasses liability which the law imposes on all insureds for their tortious conduct and not on the liability which a particular insured may choose to assume pursuant to contract. Action Ads' potential liability in this case stemmed not from its own negligent behavior, but from a contractual obligation. Therefore, Great American had no duty under the comprehensive general-liability insurance policy to defend Action Ads.

The summary judgment is affirmed.

ROONEY, Chief Justice, specially concurring.

I concur with that said in the majority opinion, but I understand one of appellants' arguments to be that notwithstanding the fact that the contract does not cover contract liability, it does include a duty to defend a breach of contract claim. In support thereof, appellants point to the policy language which recites:

"* * * the company shall have the * * * duty to defend any suit * * * even if any of the allegations of the suit are groundless, false or fraudulent. * * * "

However, the rest of the quoted provision provides in part that the "duty to defend

any suit" is one "seeking damages on account of such bodily injury or property damage." Accordingly, even the duty to defend is limited to tort actions.