TZ LAND & CATTLE CO., a Wyoming corporation; Win Condict, a/k/a/ Winthrop C. Condict; and Elsie Condict, Appellants (Defendants),

v.

Alden R. CONDICT, Appellee (Plaintiff).

No. 89–211.

Supreme Court of Wyoming.

Aug. 6, 1990.

Sky D Phifer, Lander, for appellants.

Stephen H. Kline, Cheyenne, for appellee.

Before CARDINE, C.J., THOMAS and MACY, JJ., and RAPER and BROWN, Ret. JJ.

BROWN, Justice, Retired.

In an action for trespass, appellee Alden R. Condict obtained judgment for compensatory and punitive damages against appellants.

Appellants state the issues to be:

1) Did the District Court lack subject matter jurisdiction to entertain an action in alleged trespass over 1760 acres of the public domain State Lease lands and the Bureau of Land Management lands?

2) Did the District Court lack subject matter jurisdiction to entertain an action in alleged trespass over 2140 acres of the Appellants Win Condict and Elsie Condict's mortgaged property?

3) Did the District Court err in entertaining an action for alleged trespass over the State Lease lands?

4) Did the District Court err in granting the Appellees' Motion for Summary Judgment on the question of liability?

5) Did the District Court err in denying the Appellants' Motion to Amend Their Counterclaim?

6) Did the District Court err in denying the Appellants' Motion for a New Trial?

7) Did the Honorable Larry Lehman err in presiding over this case over the strenuous objection of the Appellants?

We affirm.

The parties to this action have been in continual litigation since April 1982 and in a cold war years before that. Prior to April 1982, appellee and one or both of the individual appellants were joint owners of real and personal property and partners in a cattle ranching operation located in Carbon County, Wyoming. In April of 1982, appellee filed an action in the District Court for the Second Judicial District seeking to partition the real property and for an accounting. (*Condict v. Condict*, Civil Action No. 82C-219, Second Judicial District Court (*Condict I*)). In that case, the district court bifurcated the issues relating to partition and accounting.

In June of 1985, the district court held a hearing regarding division of the real property of the parties. While that hearing was in progress, the parties agreed to a division of the real property and appellants Win and Elsie Condict were given the choice of which half of the ranch land they would take. The division was reflected in a judgment and decree dated June 20, 1985, and filed by the district court on June 28, 1985. Win and Elsie Condict then transferred the property awarded to Win Condict by the judgment to a newly formed corporation, TZ Land & Cattle Co., of which they were the majority shareholders.

The second half of the bifurcated action dealing with the accounting for personal assets of the ranching operation was heard in November of 1985 and the decision taken under advisement. In June of 1986, Win and Elsie Condict filed a motion in the partition action to have the land division set aside, alleging fraud and coercion, and they refiled similar motions in that action in 1987 and 1988. Their motions to have the land division set aside were denied. The case then "ebbed and flowed [mostly ebbed] in the backwaters of judicial administration"[1] until a final judgment was entered January 12, 1989.[2] An appeal was taken from that judgment. That appeal was dismissed by the Supreme Court on January 24, 1990. The case presently before the court, hereinafter referred to as

---

1. Per Justice Robert R. Rose in *Whitefoot v. Hanover Insurance Company*, 561 P.2d 717, 719 (1977).

2. Four district judges were involved in various phases of *Condict I*. Judge Lehman, the judge who signed the order dated January 12, 1989, became involved in the case in 1988.

*Condict II*, is a fallout from the decision in *Condict I*.

In the spring of 1987, while awaiting a decision of the district court on the November 1985 trial and on their outstanding motions, appellants began to physically assert possession and control of property set over to Alden Condict in the 1985 judgment in *Condict I*. This property was commonly referred to as the Kennaday, Corpening and Reid places. This exercise of control initially included exerting control over road, ditches and buildings located on the Kennaday, Corpening and Reid properties. Employees of appellants entered these lands during 1987 and stayed through May of 1988. Finally, in August of 1987, appellants drove cattle with the TZ brand onto the lands to graze and pasture.

This action, *Condict II*, was brought in September of 1987 alleging that the appellants' action constituted a trespass upon land owned by Alden Condict and to which he had the sole right of possession. Appellee sought compensatory and punitive damages as a result of appellants' actions. Appellants have never denied utilizing the property in 1987 and 1988; rather, they contended in the trial court and on appeal that their use of the land was not wrongful.

Before 1982, the Condict brothers ran part of their cattle operation on lands leased from the Bureau of Land Management and on state and national forest leases. The leases were divided by the judgment of June 1985, with each of the parties assigned those leases contiguous with the lands awarded to them. All of the parties were required by the judgment to take the necessary steps to transfer the joint leases to the proper interest holder and to provide clear title of the deeded lands to the party awarded those lands by the judgment.

The dispute in *Condict II* is over parcels of land awarded to Alden R. Condict by the June 1985 decree commonly referred to as the Kennaday, Corpening and Reid properties. For reasons that do not appear in the record here, before the land division in

1985, Win and Elsie Condict claimed an undivided $7/12$ interest in those lands. In the early 1980's, Win and Elsie Condict obtained a loan from the Wyoming Farm Loan Board secured by the $7/12$ interest in the Kennaday, Corpening and Reid properties. In 1985, in the partition action, Win and Elsie Condict agreed that Alden would receive those properties in the land division. Since the parcels of land were part of the properties solely awarded to Alden Condict in the 1985 judgment, it was required that Win and Elsie Condict take the steps necessary to remove the mortgage from those properties and to have it placed on properties awarded to Win Condict by the 1985 judgment. This was never done.

At trial in *Condict II*, the court granted appellee's motion for a partial summary judgment on liability. In a jury trial, appellee received a verdict for compensatory and punitive damages.

The issues stated by appellants and their arguments overlap and some duplicate others. Furthermore, appellants' argument does not track the stated issue and is not supported by case law or cogent argument.[3]

I

In Issues 1 and 3, appellants question the jurisdiction of the district court to entertain an action for trespass on state leases and Bureau of Land Management (BLM) leased land. The state lease was originally entered into between the State of Wyoming and the Condict ranches when the ranch was run jointly. *The lease was a ten year lease most recently signed jointly by the parties* in 1977. Since the lease was contiguous to lands awarded to Alden Condict in the 1985 decree (Kennaday, Corpening and Reid), the decree provided that the lease be assigned to Alden Condict. The lease, along with the Kennaday, Corpening and Reid properties, was utilized by Alden Condict from June of 1985 through the spring of 1987.

---

3. Sky D Phifer, appellants' counsel at oral argument, came into this case late. He was not involved in the pleadings, affidavits or trials, nor did he prepare the appellate briefs.

In 1987 the lease came up for renewal. Win and Elsie Condict hastened to sign an application for renewal of that lease. Alden Condict objected to appellants' application for lease of this land when it first came to his attention. He initially refused to sign the lease as long as Win and Elsie Condict were allowed to co-sign it. Alden Condict did not sign the lease until the spring of 1989 after the State of Wyoming threatened to place the lease up for public bid unless he signed it.

Appellants contend that their application for renewal of this lease allowed them to utilize the state lease land contrary to the judgment of June 1985. The appellants' apparent argument is that since Alden Condict signed the lease a year after the trespasses by appellants ended, knowing that Win and Elsie Condict had previously signed it, he somehow condoned trespass on those lands. Appellants also allege that an officer of the State Land Board told them that they had a right to use the mortgaged and leased property.

Appellee's complaint included an allegation of trespass on the state leases awarded to him by the 1985 judgment and decree. Pleadings, motions and affidavits thereafter did not deal with the issue of trespass on the state lands. After filing the complaint, appellee chose not to address the state lease issue. The sworn testimony presented in support of appellee's motion for summary judgment and at trial alleged trespass over the deeded lands commonly referred to as the Kennaday, Corpening and Reid places. Appellants raised the issue of trespass over a state lease lying contingent to the Kennaday property just before trial on damages and it became the main thrust of their arguments to the jury. The issue is a phantom issue—one created and argued by the appellants and has only a peripheral relationship to the case actually tried.

Wyoming statutes cited by appellants do not relate to issues here. W.S. 11–34–130 and W.S. 36–9–116 cited by appellants make it a criminal misdemeanor to trespass upon lands owned by the Board or mortgaged to the Board. These statutes do not relate to civil trespass of leased lands and do not state that only the State of Wyoming has a right to pursue a trespass action against any trespasser upon lands owned by the Board. W.S. 36–9–117 and W.S. 36–10–102, also cited by appellants, do not pertain to civil trespass over leased lands.

Despite the fact that the issue raised in this argument by appellants is not one that was raised before the trial court or jury by appellee, the evidence introduced by appellants on this issue did show that a trespass was committed by the appellants on the state lease contingent to the Kennaday property awarded to appellee by the 1985 decree.

An action for trespass is an action for injury to a possessory right. The state lands in question are the subject of the lease that was required to be assigned by Win and Elsie Condict to Alden Condict by the judgment of June 1985. Appellee had a greater right of possession to those lands created by the 1985 judgment, and if he had so chosen, he could have asserted a trespass over these lands. *Noble & Carmody v. Hudson*, 20 Wyo. 227, 122 P. 901 (1912); *Bader v. Mills & Baker Co.*, 28 Wyo. 191, 201 P. 1012 (1921). The district court, being a court of general jurisdiction, had original jurisdiction over this matter pursuant to Wyo. Const. art. 5, § 10.

The problems resulting in the *Condict II* lawsuit stem from appellants' refusal to recognize and give effect to the judgment and decree of the district court—a judgment and decree to which they stipulated and assisted in its preparation.

Appellants are reminded that an order, judgment or decree of the district court governs the conduct of parties until such instrument is modified, vacated or reversed by the Supreme Court. No action rendering the judgment and decree a nullity ever took place.

II

In Issue 2, appellants contend that they were mortgagors in a mortgage on the Kennaday, Corpening and Reid proper-

ties. They apparently took the position that their status as mortgagors rendered their entry and use of the properties lawful. They took this novel position notwithstanding the court's judgment and decree of June 1985 awarding this land to appellee. The judgment and decree further directed that appellants remove and transfer the mortgage from the Kennaday, Corpening and Reid lands to other lands owned by them. So far as we know, appellants made no effort to effect such removal. Appellants cannot "boot strap" their status as mortgagors to a possessory right. Issue 2 is a spurious issue and does not merit further analysis to support our determination.

## III

In Issue 4, appellants attack the propriety of the trial court's granting a partial summary judgment on the question of liability. Appellants summarize their argument that the summary judgment was improper by stating:

a) the June 20, 1989 Judgment and Decree in *Condict v. Condict*, supra, [*Condict I*, Docket No. 89–51] was interlocutory in nature, and not a final decree;

b) the signed lease agreement by the parties negated, as a matter of law, any supposed validity or finality of the June 20, 1985 Judgment and Decree in *Condict v. Condict*, supra.

c) the continued existence of a valid mortgage on the Kennaday, Corpening and Reid properties in question remained in the names of the Appellants Win and Elsie Condict and had to be paid. This necessitated their use of the lands to generate the necessary income to make the required payments to the State of Wyoming.

d) as stated in Argument I above, without having the State of Wyoming and the federal government as parties to this action, the District Court lacked jurisdiction to entertain this action.

In *Boehm v. Cody Country Chamber of Commerce*, 748 P.2d 704, 710 (Wyo.1987), we said:

A motion for summary judgment places an initial burden on the movant to make a prima facie showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. *England v. Simmons*, Wyo., 728 P.2d 1137, 1140–1141 (1986). We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion giving him all favorable inferences that can be drawn from the facts. Id. Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden. *Jones Land & Livestock Co. v. Federal Land Bank of Omaha*, Wyo., 733 P.2d 258, 263 (1987).

■ Evidence opposing a summary judgment that is conclusory or speculative is insufficient to demonstrate that a material fact exists, and the trial court has no duty to anticipate possible proof. *Nelson v. Crimson Enterprises, Inc.*, 777 P.2d 73 (Wyo.1989).

The pleadings, admissions, affidavits, and sworn testimony on record at the time the motion for partial summary judgment was granted made a prima facie showing that no genuine issue of material fact existed and that summary judgment should be granted as a matter of law.

■ Appellants never at any time throughout the trial sought to deny the admissions requested of them by appellee. Pursuant to W.R.C.P. 36, admissions not denied within thirty days are deemed admitted. Based on their failure to deny the requests for admissions, the district court was required to find the appellants: (1) admitted that appellee was the sole owner and permittee of the properties in question; (2) stipulated to the land division in the partition action; (3) occupied and possessed part of the property set over to appellee by the June 1985 judgment and decree; (4) placed an employee on the property; (5) continued to maintain cattle on the proper-

ty; (6) constructed roads and culverts on the property; (7) told individuals intending to hay for appellee that they would not be allowed to enter the property during the 1987 haying season; and (8) refused to remove themselves from the property. The January 20, 1985 affidavit of appellee and all of the pleadings and other numerous affidavits by all of the parties on file on the date that the motion for partial summary judgment was granted clearly indicate that no material issues of fact were in dispute and that partial summary judgment was appropriate.

Numerous affidavits and other pleadings were filed by appellants. It is most difficult to determine whether these voluminous instruments were filed in opposition to appellee's motion for summary judgment or otherwise. Most of the statements made appear to have nothing to do with the issues in this case. Appellant Elsie Condict, for example, filed a 153–paragraph affidavit. In paragraph 146 she states:

> That Judge Lehman chose to condon[e] to the fact that the PROBATE OF W.C. CONDICT, the Father had not been closed when he died in 1955 in violation of W.S. (1977) § 2–7–813 as NO FINAL DECREE OF DISTRIBUTION WAS EVER ISSUED[.]

This statement is not atypical of the rantings contained in appellants' affidavits.

The 153–paragraph affidavit is totally devoted to an attack on the June 20, 1985 partition judgement and decree and a personal vituperative assault on District Judge Lehman. Appellants state that the partition judgment and decree of June 1985 was interlocutory in nature—the inference being that they were not bound by this judgment and were free to act contrary to its provisions. Appellants cite no law to support this strange notion nor do they present any cogent argument.

Judicial administration would be in disarray if parties were free to choose which orders of the court they would obey and which they would flout. The June 1985 partition judgment and decree, though interlocutory, governed the rights and duties of the parties. It was in full force and

effect unless modified, vacated or reversed on appeal. Nothing ever happened to relieve appellants of their duty to obey the judgment and decree. As mentioned earlier, appellants' appeal to the Supreme Court on the partition action and accounting was dismissed.

After appellee made a prima facie showing that summary judgment should be granted, appellants totally failed to meet their burden to demonstrate specific facts showing that a genuine issue of material fact existed.

## IV

In Issue 5, appellants contend that the trial court abused its discretion in not allowing them to amend their counterclaim. In *Bush v. Duff*, 754 P.2d 159, 166 (Wyo. 1988), this court held that "[t]he allowance or disallowance of an amended complaint is within the sound discretion of the district court and can be reversed on appeal only when an abuse of discretion is perceived."

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The principal basis for appellants' argument that they should have been allowed to amend their counterclaim is that they "recently discovered [a] State Lease signed by all the parties." Appellants have not demonstrated how this "recently discovered" document would affect the remaining issues to be tried before a jury or how an amendment would give rise to a viable new issue to be tried before a jury. The proposed amendment seems to be yet another attempt to attack the June 1985 partition

judgment and decree and place before the jury an issue already decided by the district court in the liability phase of this case.

In the order denying appellants' motion to amend, the court left open the affirmative defense involving the lease. At trial the court was liberal in admitting evidence and allowed testimony by appellants' witnesses on most of the issues raised by appellants in their motions to amend. We perceive no abuse of discretion in the action taken by the court in its ruling on appellants' motion to amend the pleadings.

## V

In Issue 6, appellants contend that the court erred in not granting a motion for a new trial. They address: "(1) irregularities in the proceedings of the trial court, (2) excessive damages not sustained by sufficient evidence, and (3) a fundamental error of law."

Appellants assert that appellee's counsel caused to be placed into the list of exhibits for review by the jury one that had not been admitted into evidence and that he threatened a witness. These claims of impropriety were made a month after the verdict but were not supported by testimony from the supposedly threatened witness or the jurors. In any case, the allegations of impropriety were rebutted by affidavits of counsel for appellee, the court reporter and the witness who was supposed to have been threatened.

Appellants assert that damages awarded appellee were excessive; however, they do not point out deficiencies in appellee's proof but rather complain in general terms and conclude that both compensatory and punitive damages were excessive.

At least four witnesses testified about compensatory damages on such matters as loss of hay and pasture and that appellee was unable to increase his cattle herd because of these losses. If the jury believed and accepted appellee's evidence on damages, which it apparently did, the damages awarded by the jury were not in excess of the proofs made. On the issue of punitive damages, appellants stipulated the amount of their net worth. Considering appellants'

net worth and their continuous disregard of the partition judgment and decree, the punitive damage award does not shock our conscience.

Appellants direct our attention to *Cates v. Eddy*, 669 P.2d 912, 920 (Wyo.1983):

When the verdict of the jury, at first blush, appears outrageous, grossly excessive, or to be the result of passion, prejudice, mistake, or improper motive, so as to be obviously disproportionate to the injury shown, then it is the duty of the court to modify the verdict.

We do not perceive any of the reasons stated in *Cates* for a modification of the verdict.

 Appellants argue that damages were exacerbated by evidence of and comment on a nolo contendere plea entered by appellant Win Condict for an assault and battery charge. Appellants objected to this testimony on the basis of materiality and relevance. On appeal, however, appellants contend that the testimony was inflammatory, but they say nothing about relevance. Appellants did not propose any curative instructions for the court. It is well established that an objection to testimony must be made on proper grounds or it may be rightfully overruled by the court, *Valerio v. State*, 429 P.2d 317 (Wyo.1967), and that issues which have not been properly raised below will not be addressed for the first time on appeal. *Banks v. Crowner*, 694 P.2d 101 (Wyo.1985).

Furthermore, appellants have failed to show that they suffered any prejudice by the admission of the testimony. Assuming the reference to the nolo contendere plea to be improper, the error was harmless. For it to be regarded as harmful and reversible there must be a reasonable probability that in the absence of error the verdict may have been more favorable to the defendant. *Trujillo v. State*, 750 P.2d 1334 (Wyo. 1988). The fact that error might exist does not create a presumption of prejudice. *Condict v. Whitehead, Zunker, Gage, Davidson & Shotwell, P.C.*, 743 P.2d 880 (Wyo.1987). Appellants have failed to show that the outcome would likely have

been different had this issue not been raised, especially considering the weight of the evidence in appellee's favor and other evidence of violence which was not objected to.

The fundamental error of law alluded to by appellants in this issue apparently has reference to the state lease awarded to appellee in the June 1985 judgment and decree. We have addressed that matter several times in this opinion and have about wrung it dry. Suffice it to say, that judgement and decree was binding on appellants and they flouted it to their peril.

In their brief on the issue of a new trial, appellants scatter-gun into their argument: failure of appellee to mitigate damages, denial of rebuttal testimony, and the allegation that punitive damages would serve no purpose. These three complaints are not supported by cogent argument or case law and do not demonstrate reasons to grant a new trial. The trial court did not abuse its discretion in denying the motion for a new trial.

## VI

■ On March 20, 1989, appellants filed a motion for disqualification for cause against District Judge Larry Lehman. This motion is provided for under W.R.C.P. 40.1(b)(2). Judge Lehman denied the motion, and appellants raise that denial as their final issue on appeal.[4]

This motion was made after Judge Lehman had rendered his decision in *Condict I.* This case has been referred to frequently in this opinion and involved substantially the same parties as this case. Appellants state that in *Condict I,* Judge Lehman exhibited partisanship and bias. These conclusions are the only stated reasons why Judge Lehman should be disqualified. The law requires a greater showing on the part of appellants in order for Judge Lehman to properly recuse himself. *Cordova v. Gosar,* 719 P.2d 625 (Wyo.1986); *Kobos By and Through Kobos v. Sugden,* 694 P.2d 110 (Wyo.1985).

Construing the words "bias" and "prejudice" as used in W.R.C.P. 40.1(b)(2), this court said: "Prejudice involves a prejudgment or forming of an opinion without sufficient knowledge or examination. Bias is a leaning of the mind or an inclination toward one person over another. The 'bias' which is a ground for disqualification of a judge must be personal." *Cline v. Sawyer,* 600 P.2d 725, 729 (Wyo.1979).

The court has also said: "Such conditions must exist which reflect prejudgment of the case by the judge or a leaning of his mind in favor of one party to the extent that his decision in the matter is based on grounds other than the evidence placed before him." *Pote v. State,* 733 P.2d 1018, 1021 (Wyo.1987).

Appellants produced no evidence that Judge Lehman formed an opinion about this lawsuit without sufficient knowledge; that Judge Lehman had a personal bias for or against any of the parties to this action; or that his decision was based on grounds other than the evidence placed before him. Bias and prejudice cannot be presumed from unfavorable rulings in the past. *Cordova,* 719 P.2d at 625. That Judge Lehman found against the appellants in *Condict I* is not evidence of bias or prejudice under the definition given those terms by this court.

Finally, we have said:

Without a valid reason for recusal, a judge has a duty not to recuse himself.

"Recusal and reassignment is not a matter to be lightly undertaken by a district judge. While, in proper cases, we have a duty to recuse ourselves, in cases such as the one before us, we have concomitant obligation *not* to recuse ourselves; absent a valid reason for recusal, there remains what has sometimes been termed a 'duty to sit'. [Citations.]" *Simonson v. General Motors Corporation,* U.S.D.C.Pa., 425 F.Supp. 574, 578 (1976).

*Cline,* 600 P.2d at 729.

During the course of a few years a district judge likely decides one or more cases

---

4. Appellants exercised their peremptory disqualification against Judge Robert A. Hill on October 13, 1987. Two other district judges had some involvement in this case before it was assigned to Judge Lehman.

against every lawyer in the district. If an adverse decision in an earlier case demonstrated bias and prejudice by the trial judge, he could be disqualified on most cases and be out of business. This issue of prejudice and bias is spurious, and the motion to disqualify was properly overruled.

Appellants devoted most of their efforts in attempting to retry *Condict I* and have only given cursory attention to the real issues in this case.

Affirmed.