**ARROW CONSTRUCTION CO., INC., Appellant (Plaintiff),**

v.

**Leslie W. CAMP, Appellee (Defendant).**

No. 91–135.

Supreme Court of Wyoming.

March 4, 1992.

William L. Hiser of Brown, Erickson & Hiser, Rawlins, for appellant.

Gary R. Scott of Hirst & Applegate, Cheyenne, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Arrow Construction Company, Inc. (Arrow) sued Leslie W. Camp (Camp) for breach of contract and negligence for Camp's procurement of a policy of health insurance for Arrow's employees, which policy was canceled because Arrow was ineligible for coverage. Arrow appeals the trial court's entry of summary judgment for Camp.

We affirm.

Appellant states the issues as follows: "I. Does an employer, who agrees to provide group health insurance coverage to its employees, pursuant to an employment contract, have a cause of action against the insurance agent, with whom

the employer contracted to procure such insurance, when the insurance agent, through his negligence or breach of contract, fails to procure such insurance? "II. If the answer to No. I is yes: does the employer's purchase of an individual policy, on behalf of an employee, in an attempt to mitigate the losses incurred by that employee, which were to have been covered by the group policy the agent was to procure, affect the employer's cause of action?

"III. If the answer to No. II is yes: are there material issues of fact relating to the terms of the employment contract, the insolvency of the company issuing the individual policy, the issuance and terms of the individual policy and other damages suffered by the appellant which preclude summary judgment in this case?"

The facts from this abbreviated record are extracted from uncontroverted statements in the pleadings and from exhibits attached to appellee's motion for summary judgment. Where appellee failed to provide evidence to refute allegations contained in appellant's complaint, we have adopted these unrefuted allegations. *Petersen v. Campbell County Memorial Hospital Dist.*, 760 P.2d 992, 995 (Wyo.1988).

Appellant Arrow is a Wyoming corporation whose principal place of business is in Rawlins. Arrow provides health insurance coverage for its supervisory personnel as part of their compensation package. Arrow does not have a written contract of employment or a written contract obligating it to provide insurance to these employees. Until October 15, 1988, Arrow had a group health insurance policy in effect with Continental Life and Accident (Continental). Sometime in 1988, Arrow's president, Michael Blaine Hickman (Hickman), became concerned about the increase in the premiums on the Continental policy. Shortly before the expiration date of the policy, he contacted appellee Camp, an insurance agent licensed to do business in Wyoming.

Camp agreed to search for a less expensive group health insurance policy to re-place the Continental policy. Camp and Hickman discussed Arrow's health insurance needs, its number of employees, and type of business. Also discussed was the pre-existing medical condition (cancer) of one of Arrow's supervisory employees, Jerry H. Pittenger. Appellant claims that Camp agreed to obtain a policy which would cover Mr. Pittenger's pre-existing condition. Camp denies making such an agreement. This disputed fact was not material as to prevent entry of summary judgment.

Camp recommended a policy through the First Farwest Group Insurance Trust (First Farwest). Someone (the record is not clear who) filled out a "Request for Participation" in the First Farwest plan which Hickman signed on October 5, 1988. This document stated that seven of the eight eligible Arrow employees would be enrolled in the plan. On October 17, 1988, First Farwest notified Arrow that its coverage had been approved effective October 1, 1988.

Relying on the new First Farwest coverage, Arrow allowed its coverage with Continental to lapse on October 15, 1988. First Farwest provided coverage to Arrow's covered employees from October 1, 1988, through December 31, 1988. During this time period, Arrow paid premiums to First Farwest; and Mr. Pittenger filed a claim, at least a portion of which First Farwest later paid.

In early November 1988, First Farwest notified Arrow that it was canceling its policy effective December 31, 1988. The reason given was that the plan under which Arrow was enrolled allowed coverage only for an employer with no more than 15 to 20 employees. Arrow had more than 15 to 20 employees, although it provided health insurance only to its supervisory personnel. Arrow also learned at this time that First Farwest had filed for bankruptcy.

Arrow could have renewed its policy with Continental but pre-existing conditions would not have been covered. Arrow complained to the State Insurance Commissioner about First Farwest's conduct in canceling its policy. The Insurance Commission-

er persuaded First Farwest to continue coverage for Mr. Pittenger. Arrow obtained coverage for its other supervisory employees through Blue Cross, Blue Shield commencing effective April 1 or May 1, 1989 (the exact date is unclear from the record).

Arrow paid First Farwest premiums of about $300.00 per month from January 1989 until Pittenger's death. Mr. Pittenger died in November 1989. First Farwest has never paid any of Mr. Pittenger's claims for this time period, and Arrow never received a written policy for the individual coverage from First Farwest. Hickman stated he believed the claims were not paid because First Farwest had filed bankruptcy. At the time Hickman was deposed in February 1991, he estimated that these unpaid claims amounted to between $10,000.00 and $20,000.00.

At some point early in 1989, Arrow began sending Mr. Pittenger's wife $250.00 per month in order to assist her with Mr. Pittenger's unpaid medical bills. Arrow continues to send this amount each month. Mrs. Pittenger has not threatened Arrow with legal action because of the failure of First Farwest to pay her husband's claims.

On September 6, 1990, Arrow filed this action in district court against Camp seeking damages for breach of contract to procure insurance and negligent failure to obtain adequate group coverage. Camp moved for summary judgment, which the trial court granted on April 29, 1991. The court reasoned that summary judgment was proper because (1) having no legal obligation to pay Mr. Pittenger's medical bills, Arrow had not suffered loss, and (2) assuming Arrow did suffer damage, these damages were caused by the insolvency of First Farwest, for which Camp could not be held liable. Arrow took timely appeal from the trial court's order.

Our standard of review of the trial court's entry of summary judgment for Camp is as follows:

" 'We review a summary judgment in the same light as the district court, using the same materials and following the same standards. Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law.' " *Clark v. Industrial Co. of Steamboat Springs, Inc.,* 818 P.2d 626, 628 (Wyo.1991) (citations omitted) (quoting *Zmijewski v. Wright,* 809 P.2d 280, 282 (Wyo.1991)).

Also,

" '[a] motion for summary judgment places an initial burden on the movant to make a prima facie showing that no genuine issue of material fact exists and that summary judgment should be granted as a matter of law. Rule 56(c), Wyoming Rules of Civil Procedure. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. We analyze challenges to a grant of summary judgment by reviewing the record in a light most favorable to the party opposing the motion giving him all favorable inferences that can be drawn from the facts. Conclusory statements or mere opinions are insufficient, however, to satisfy an opposing party's burden.' " *TZ Land & Cattle Co. v. Condict,* 795 P.2d 1204, 1208 (Wyo.1990) (citations omitted) (quoting *Boehm v. Cody Country Chamber of Commerce,* 748 P.2d 704, 710 (Wyo.1987)).

■ We have held that an insurance broker or agent who undertakes, for compensation, to procure insurance for another and who through fault or neglect fails to do so, will be held liable for any damage resulting from his failure to exercise reasonable care. *Hoiness–LaBar Ins. v. Julien Const. Co.,* 743 P.2d 1262, 1273 (Wyo. 1987), *quoting Hursh Agency, Inc. v. Wigwam Homes, Inc.,* 664 P.2d 27, 32 (Wyo. 1983). The measure of damages in such an action is "that amount which would have been recovered had the insurance been furnished as agreed." *Action Ads, Inc. v. Judes,* 671 P.2d 309, 312 (Wyo.1983).

■ It is undisputed that Camp undertook for compensation to provide Arrow with employment coverage for Arrow's employees and that the policy he provided was not proper for Arrow. However, the party

who brings a suit for failure to provide insurance must also prove resulting damages. Arrow's complaint asserts no direct harm personal to itself. Instead, Arrow theorizes that had Camp obtained a valid group health insurance policy, *Mr. Pittenger* would have received insurance proceeds sufficient to cover his $15,000.00 in outstanding, unpaid medical bills. To the objection that these damages are Mr. Pittenger's and his estate is the proper party to bring an action for them, Arrow responds that it is a proper party for two reasons. First, Arrow claims, Pittenger was a third-party beneficiary of Arrow's contract with Camp, which makes Arrow eligible to sue on the contract in his behalf. Second, Arrow argues, this suit is brought as an action for indemnification for its own liability for failing to provide health insurance to Pittenger under the terms of his employment contract with Arrow. We shall address Arrow's second argument first, as it was the primary theory of relief pled at the trial court level.

■ Arrow argues that it is entitled to seek recovery from Camp in order to be indemnified for a claim by Pittenger's estate against Arrow for failure to retain a proper group insurance carrier. Arrow points to the $250 per month it has been paying to Mrs. Pittenger, presumably by way of settlement of such a claim. A party seeking indemnification for a settlement must show that it had actual legal liability to the injured party. 41 Am.Jur.2d, *Indemnity* § 33 (1968).

■ Arrow alleges that its employment agreement with Pittenger created a duty to provide Pittenger with continuous insurance coverage. Arrow's employment agreement with Pittenger was never reduced to writing. Nor did Arrow have any type of employee handbook. Whether or not Pittenger was an at-will employee, however, an oral agreement to provide insurance is not made unenforceable by the at-will doctrine. *Capriulo v. Bankers Life Co.*, 178 Ga.App. 635, 344 S.E.2d 430, 434 (1986). We therefore hold that the oral agreement described by Hickman was sufficient, for purposes of summary judgment,

to prove a contractual duty to provide insurance binding on Arrow.

■ In order to recover from Arrow, Pittenger would also have to show that Arrow breached this duty. The record reveals that · Arrow provided coverage for Pittenger through Continental until October 15, 1988, when that policy lapsed, and thereafter through First Farwest. Thus, there was always insurance coverage in effect. The only possible liability to Pittenger on Arrow's part, therefore, would have to result from the fact that Arrow switched coverage from Continental to First Farwest.

The evidence presented does not demonstrate a basis on which Arrow can be held liable to Pittenger for changing to the First Farwest policy. An employer who acts in good faith to provide health insurance is not liable to the insured for the insurer's failure to pay. As a leading commentator on the law of insurance has stated:

"The employer does not, by reason of the peculiar position in which he is placed, become a guarantor of the payment of the insurance, nor an insurer. So far as direct liability upon the policy of insurance is concerned, he has none, and he is not a proper party in a suit by the employee against the insurer to recover benefits promised therein. If the insurer is liable, the employer is not; and this has been held true even where the insurer is financially unable to discharge its obligations, if the employer used good faith in selection of that company." 1 Appleman, *Insurance Law and Practice* § 43.25 at 108 (1981) (footnotes omitted).

In *Continental Ins. Co. v. Bussell*, 498 P.2d 706 (Alaska 1972), the Alaska Supreme Court discussed the duty of an employer under a union contract which required him to provide life insurance for his employees while traveling by aircraft on company business. The court held that Bussell, the employer, could not fulfill his obligation to provide insurance by becoming a self-insurer. His employees had a right to look to an insurer for payment rather than to him. Conversely, the court said:

"[H]ad Bussell in good faith secured an appropriate policy from a life insurance company, he would have complied with his duty under the union contract regardless of the financial ability of such company to pay the executrix in accordance with the policy terms. Bussell, under the contract, had no direct obligation to pay the $25,000 as damages." *Bussell,* at 709.

We believe the Appleman treatise states the correct rule of liability where an employer has agreed to provide insurance for his employee. Arrow could be liable here only if it failed to exercise good faith in choosing the First Farwest policy. The fact that First Farwest eventually may have gone bankrupt does not establish that Arrow acted in bad faith. Arrow's president testified that it was not until after Arrow was given written notice of cancellation that Arrow discovered First Farwest had filed for bankruptcy.

Furthermore, Arrow's choice of a policy for which a company of its size turned out to be ineligible was not the cause of Pittenger's losses. Under Wyoming law, Pittenger was entitled to a converted policy which covered pre-existing conditions when it was later discovered that Arrow employees were ineligible for the First Farwest plan. Such policy was in fact issued. Wyoming Statute 26–22–201 (June 1991 Repl.), in effect at the time Arrow changed to First Farwest, states as follows:

"A group policy or certificate delivered or issued for delivery in this state which provides hospital, surgical or major medical expense insurance, or any combination of these coverages, on an expense incurred basis, but not a policy which provides benefits for specific diseases or for accidental injuries only, shall provide that an employee or member whose insurance under the group policy has been terminated *for any reason* and who has been continuously insured under the group policy, and *under any group policy providing similar benefits which it replaces,* for at least three (3) months immediately prior to termination, is entitled to have the insurer issue to him a policy of health insurance, referred to in this article as the converted policy. An employee or member is not entitled to have a converted policy issued to him if termination of his insurance under the group policy occurred because he failed to pay any required contribution, or any discontinued group coverage was replaced by similar group coverage within thirty-one (31) days from the date of discontinuation." (emphasis added)

Under this statute, an employee is entitled to a converted policy so long as he has been continuously covered, by either a current or prior insurance policy, for three months or more. A converted policy provides individual coverage either substantially similar to the canceled group coverage or within limits provided by statute. W.S. 26–22–202(a)(xiv) (June 1991 Repl.). The statute says that continued coverage under a converted policy is available if the group policy is terminated "for *any* reason." Also, the converted policy must cover pre-existing conditions covered by the previous group policy. W.S. 26–22–202(a)(iii)(C) (June 1991 Repl.). There was thus no danger that simply switching from Continental to First Farwest would rob Mr. Pittenger of coverage, because even if First Farwest later terminated the policy, Mr. Pittenger was entitled to converted coverage through First Farwest.

Finally, Arrow did not act in bad faith by obtaining the converted policy to which Pittenger was entitled. Even if First Farwest was in bankruptcy, it did promise to issue a policy. First Farwest was required, by the statute cited above, to cover Pittenger's pre-existing conditions under the converted policy. Given the choices it had, we cannot say that Arrow acted in bad faith by obtaining the converted policy.

To sum up, Arrow did not act in bad faith. It is not liable to Pittenger's estate for the failure of First Farwest to cover medical costs for Pittenger's pre-existing condition. Therefore, Arrow cannot seek indemnity from Camp.

Arrow's other theory of recovery is that it is entitled to sue Camp to enforce its contract on behalf of Pittenger and its oth-

er employees. Arrow's argument on this issue fails for a different reason. Although, as a party to the contract to procure insurance, Arrow is entitled to sue for Pittenger's damages, Pittenger did not suffer any damages which can be traced to Camp's alleged breach of that contract. The damages alleged by Arrow arise because Pittenger did not receive the benefit of Arrow's contract with Camp.

■ Arrow points us to the general rule that a party to a contract may sue to enforce the rights of an intended third-party beneficiary. 17A Am.Jur.2d, *Contracts* §§ 425, 426 (1991). We have also said that an action need not be brought in the name of the person who will ultimately benefit from the recovery, so long as the party bringing the suit is a real party in interest. *Greenough v. Prairie Dog Ranch, Inc.*, 531 P.2d 499, 501 (Wyo.1975). Appellee has pointed to no cases, and we have found none, which make the employer who enters a contract to procure insurance on behalf of his employees any less a real party in interest than any other contracting party. Therefore, we hold that a party to a contract to procure insurance may sue on the third-party insured's behalf.

■ However, the trial court's summary judgment must be affirmed because any damages Arrow suffered were caused by the insolvency of First Farwest, for which Camp cannot be held liable. Arrow argues strenuously that it was Camp's initial procurement of the invalid First Farwest policy which breached the contract and caused the harm. Arrow characterizes its procurement of the individual policy as "mitigation" of the damages caused by purchase of the group policy. The First Farwest coverage Camp obtained did not cause the harm, however, since First Farwest did provide coverage until its policy was canceled, and was thereafter obligated by law to provide a converted policy. It was First Farwest's subsequent failure to pay under the converted policy which was responsible for Pittenger's losses.

■ Indirectly, of course, Arrow ended up with a non-paying insurance carrier because it relied on Camp's procurement of a new policy to terminate the Continental coverage. However, had First Farwest not failed to perform, the injury alleged would not have occurred. In contract as well as in tort, "damages are not recoverable for injury that is too remote from the conduct of the defendant constituting his breach of duty." 5 A. Corbin, *Corbin on Contracts* § 997 (1964). Thus, courts have refused to award damages where the plaintiff fails to prove that his damages resulted from the defendant's conduct. *See e.g. Brown v. First Federal Savings and Loan Ass'n*, 154 Mont. 79, 460 P.2d 97, 102 (1969).

As was mentioned earlier, damages from wrongful failure to pay claims could not flow to Pittenger from Camp's procurement of this policy because Pittenger was entitled, even in the event of cancellation, to individual, converted coverage through First Farwest. Had Camp known of First Farwest's insolvency or prospective failure to pay at the time he procured the group policy, Arrow might have a cause of action against Camp for negligence in choosing First Farwest. However, Arrow's cause of action is not based on this theory, nor did Arrow present any evidence or argument on this theory to the trial court.

Camp's failure to properly insure Arrow did not cause Pittenger's loss. First Farwest's subsequent insolvency or wrongful failure to pay did. Camp is not liable for First Farwest's failure to pay Pittenger's claims, and Arrow may not sue Camp for them.

Arrow's arguments at the trial court level centered on the two theories mentioned above, although Arrow claimed that *it* was the injured party due to the breach of contract. In its third issue, Arrow claims that it has suffered compensable damages in addition to those suffered by Mr. Pittenger. Arrow seeks recovery for the costs incurred in finding new insurance coverage and for the cost of the individual benefits policy over the cost of group coverage. These claims were not made at the trial court level, and are asserted for the first time on appeal. At his deposition, Mr. Hickman testified as follows concerning Arrow's damages:

"Q. So as far as what Arrow Construction is out of pocket to date because of First Farwest's cancellation of the policy or failure to pay Mr. Pittenger's medical bills is the approximate $300 a month premium they paid to First Farwest from January of 1989 until Mr. Pittenger's death?

"A. Yes.

"Q. Plus the $250 dollars [sic] a month being paid to Connie Pittenger from approximately February 1989 to date?

"A. Yes.

"Q. Anything else that would be included in any out-of-pocket loss or expenses incurred by Arrow because of the failure of First Farwest to pay claims?

"A. Not that I am aware of anything."

■ No fact issue was created at the trial court level concerning sums paid by Arrow to engage the assistance of the insurance department or to obtain the individual policy. Arrow developed only two sources of damage personal to itself: the $250 per month paid to Mrs. Pittenger and the $300 per month premiums for the individual policy. As discussed above, the money paid to Mrs. Pittenger was a voluntary undertaking on Arrow's part, which it had no legal duty to perform. Therefore, it could create no legal duty by Camp to indemnify Arrow. As to the policy costs, there was no evidence presented to the trial court that Arrow paid more for the individual policy than it had for group coverage. On the other hand, if Arrow seeks recovery of the entire amount it paid for a useless policy, its claim is with the insurer rather than with Camp because it is the insurer who has failed to pay.

The remaining issues of fact described by Arrow in its third issue are not material. A material issue of fact is one which establishes or refutes an essential element of a cause of action or a defense asserted by a party. *McLaughlin v. Michelin Tire Corp.*, 778 P.2d 59, 63 (Wyo.1989). None of the factual issues asserted by Arrow can change the fact that Camp's alleged breach of contract did not cause the losses of which appellant complains.

The trial court's order granting summary judgment for Camp is affirmed.