[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Plaintiff, Kenneth Bingman, commenced this one count breach of contract action against the Defendant, New Milford Board of Education, to recover life insurance benefits allegedly due to him under the terms of a collective bargaining agreement between the Defendant and the New Milford Education Association. At trial, the parties submitted a detailed Stipulation of Facts and documentary evidence. In addition, the Plaintiff offered the testimony of Karen Hores, President of the New Milford Education Association, and the Defendant offered the testimony of Thomas M. Corbett, Defendant's business manager. The facts recited herein derive from the Stipulation and the documentary and testimonial evidence offered at trial. CT Page 2422
The Plaintiff is the widower of Claire Bingman, who was employed as a non-tenured teacher by the Defendant from September 1986 to February 25, 1990, the date of, her death. Stip., para. 1, 2 and 14. At all times during her employment, she was covered for her salary, insurance benefits and other conditions of employment under collective bargaining agreements between the Defendant and the New Milford Education Association, of which she was a member. Stip., para. 3. Due to illness, Claire Bingman was absent from work from January 22 to April 24, 1988, and her last day of professional activities in the New Milford School system was May 13, 1988. Stip., para. 4 and 5. Also due to illness, she did not teach in the classroom during the 1988-89 and 1989-90 school years, although she did sign employment contracts with the Defendant for both those years. Stip., para. 6, 7 and 10; Exhibits 1 and 3. According to those contracts, her authorized salary for the 1988-89 school year was $33,054, and her authorized salary for the 1989-90 school year was $34,212. Stip. para. 7 and 11. Although in neither year did she receive her full salary, she was paid for fifteen sick days in both those years at a per diem rate based on her authorized annual salary. Stip., para. 8 and 12. After exhausting her sick days for the 1989-90 school year, Claire Bingman did not apply for "medical leave" for her time absent from work, but instead continued to receive group insurance benefits for the 1989-90 school year at the expense of the Defendant. Stip., para. 13. Claire Bingman died on February 25, 1990. Stip., para. 14.
The Plaintiff is the beneficiary of the group life insurance provided by the Defendant to his wife under the collective bargaining agreements. Stip., para. 17. Confederation Life Insurance Company is the life insurance carrier. Stip., para. 18; Exhibits 6 and 7. Following his wife's death, the Plaintiff applied for life insurance benefits to the Defendant's business manager, who submitted an application to the insurance carrier. Stip., para. 19, 20, and 21. On the application, the Defendant's business manager indicated that the date Claire Bingman was "last actively at work" was May 13, 1988, and that the amount of insurance payable to the beneficiary of her policy was $7,000. Stip., para. 22; Exhibit 8. The plaintiff received a check for $7,014.95 from Confederation Life. Stip., para. 23; Exhibit 9. This amount was based on 25% of Claire Bingman's salary on the date she was "last actively at work," which was May 13, 1988, when her authorized annual salary was $28,799. Stip., para. 15 and 22. The Plaintiff claims that he is entitled to the difference between the amount received ($7,014.95) and 50% of CT Page 2423 Claire Bingman's annual salary for the 1989-90 school year ($34,212/2=$17,106), which amounts to $10,091.05. Stip., para. 25.
The New Milford Education Association filed a grievance claiming the Defendant owed this amount under the 1989-92 collective bargaining agreement. Stip., para. 26. An arbitrator ruled that the dispute over life insurance benefits was non-arbitrable because the collective bargaining agreement provides that "disputes covering payment or non-payment will be taken up directly with the insurance carrier and will not be subject to the grievance procedures." Stip., para. 27; Exhibit 10. The arbitrator did not reach a conclusion as to whether the Defendant had in fact breached the 1989-92 collective bargaining agreement. Exhibit 10.
Plaintiff then commenced this breach of contract action against the Defendant to recover the difference in the amount of life insurance benefits he received and the amount he claims he is entitled to under the 1989-92 collective bargaining agreement. Plaintiff's one count complaint solely alleges that Defendant has breached the 1989-92 collective bargaining agreement by not paying the Plaintiff fifty percent of his late wife's annual salary as of the date of her death. Confederation Life Insurance Company, the life insurance carrier, has not been made a party to this litigation.
As framed by the pleadings, in particular the allegations of the Plaintiff's complaint and the theory upon which this case was tried, the Court is presented with the following two issues:
 (1) Whether the life insurance provision of the 1989-92 collective bargaining agreement applies, rather than that of the prior 1987-89 agreement; and
 (2) Whether the Defendant has a direct obligation under the applicable collective bargaining agreement to pay life insurance benefits to the Plaintiff when the Defendant has procured a group life insurance carrier.
If either of these issues is answered in the negative, judgment must enter for the Defendant. CT Page 2424
 I. Applicability of the 1989-92 Collective Bargaining Agreement.
The parties have stipulated that Article VI, Group Insurance and Retirement Benefits, Section 2, Life Insurance of the 1989-92 collective bargaining agreement provides:
 Life insurance for teachers in the amount of fifty (50%) percent of salary for non-tenured teachers and one hundred-fifty (150%) percent of salary for tenured teachers.
Stip., para. 16; Exhibit 5. The same provision found in Article VI-Group Insurance and Retirement Benefits, Section 1(a)(iv) of the 1987-89 collective bargaining agreement, however, provides:
 Life insurance for teachers in the amount of twenty-five (25%) percent of salary for non-tenured teachers and one hundred (100%) percent salary for tenured teachers.
Stip., para. 15; Exhibit 4.
The Defendant contends that Claire Bingman was not entitled to the increase in life insurance benefits effected by the 1989-92 collective bargaining agreement. The Defendant bases its position upon a provision in booklets issued to its teachers describing the group life insurance policy procured for its employees. These booklets limited eligibility for benefits in the following manner:
 All increases will be effective on the first day you are actively at work coincident with or immediately following the later of the date eligible or the date Confederation Life approves any evidence of insurability that may be required.
Exhibits 6 and 7. Based on this provision, the Defendant argues that Claire Bingman is only entitled to the level of benefits she had on her last day actively at work, which was May 13, 1988. Since the increase in benefits did not become effective until July 1, 1989, the Defendant claims that the increase never became effective for her since she was never "actively at work" after that date. Therefore, the Defendant contends the Plaintiff was properly paid benefits at the level under the preceding CT Page 2425 collective bargaining agreement, prior to the increase.
In Landis v. American Potash Chemical Corporation, 375 P.2d 402
(Nev. 1962), the court held that an employee who died while participating in a strike was not actively engaged in work within the provisions of a group life insurance policy, and therefore the employer was not liable to the employee's beneficiary for breach of a collective bargaining agreement. The employer had terminated the group policy after the decedent and his fellow employees had been out on strike for three months. In Landis,
both parties explicitly agreed that the collective bargaining agreement and the policy of insurance "must be construed together." Id., 403. The court, thus, relied on language in the insurance policy terminating coverage when employees ceased to be actively engaged in work on a full-time basis. Id. The court concluded that a striking employee was not actively engaged in work on a full-time basis, and affirmed the trial court's judgment for the employer. Id., 409.
In this case, however, the parties have not agreed to construe together the collective bargaining agreement and the group insurance policy or the booklets describing the policy. There is no provision in the 1989-92 collective bargaining agreement conditioning or limiting group life insurance benefits to teachers who are "actively at work." Instead, the agreement clearly and unambiguously provides for "[l]ife insurance forteachers in the amount of . . . ." (Emphasis added.) The agreement limits these benefits only to teachers, not to teachers who are actively at work. The agreement also does not condition benefits on fulfilling the eligibility requirements of the group policy or of any booklets issued by the insurer. In fact, the agreement explicitly provides that it "contains the full and complete agreement between the Board and the Association on all negotiable issues unless changed by mutual consent of both parties [and that] [s]uch mutually consent changes shall be in writing and attached hereto." There is no evidence that the collective bargaining agreement ever was changed by the parties to condition or limit the level of benefits based upon whether a teacher was actively at work.
The parties have stipulated that Claire Bingman was employed as a non-tenured teacher by the Defendant from September 1986 until the date of her death in February 1990. Stip., para. 2. She signed an employment contract for the 1989-90 school year, the first year the 1989-92 collective bargaining agreement was in CT Page 2426 effect. Stip., para. 10; Exhibit 3. Her salary level for this year was determined by the teacher salary schedule set forth in that collective bargaining agreement. See Exhibit 5. During the 1989-90 school year the Defendant paid her for sick days at a rate based upon her 1989-90 salary. Stip., para. 8. Furthermore, she continued to receive group insurance benefits for the 1989-90 school year at the expense of the Defendant. Stip., para. 13.
Claire Bingman was employed by the Defendant during the 1989-90 school year as a teacher. Since the 1989-92 collective bargaining agreement did not condition the level of life insurance benefits to teachers actively at work, the level of life insurance benefits found in that agreement applies. The aforementioned first issue is answered in the affirmative.
 II. Defendant's Obligation Under the 1989-92 Agreement.
Plaintiff's theory of recovery in his one count complaint is that by reason of the collective bargaining agreement, Defendant has a direct contractual obligation, as primary obligor or guarantor, for payment of the life insurance benefits specified therein, and that he, as a third-party beneficiary thereunder, can enforce that obligation. Plaintiff relies on a number of cases holding that in certain circumstances a third-party beneficiary to a collective bargaining agreement has rights under that agreement. None of these cases, however, is controlling on the outcome of this case since they do not address the specific issue of whether Defendant does have such a contractual direct payment obligation.
Plaintiff first relies on Flynn v. Newington, 2 Conn. App. 230,477 A.2d 1028 (1984) as dispositive of all the issues before the Court. Flynn upheld the trial court's vacation of an arbitration award, in a case described by the Appellate Court as "a study in procedural gymnastics." Id., 238. In Flynn, a retired school teacher sought to recover medical expenses incurred by his wife from the town and school board claiming a breach of a collective bargaining agreement. Id., 232. The court noted that "signatories to a collective bargaining agreement are not the only entities with rights that arise from that contract." Id., 238. The court held that the trial court was not bound to limit the arbitration process to the two parties who executed the collective bargaining agreement, and it was not prohibited from referring the merits of the dispute to arbitration. The court, CT Page 2427 however, never addressed the substantive issue of whether the plaintiffs were entitled to payment under the terms of the collective bargaining agreement. Moreover, the issue in Flynn
concerned the obligation to pay retirement benefits. The Plaintiff's claim in this case is not for retirement benefits or a death benefit, but is instead for life insurance benefits.Flynn is inapposite.
The Plaintiff also relies on a number of federal court cases in support of his position. Lewis v. Benedict Coal Corp.,361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960); Robbins v.Prosser's Moving Storage Co., 700 F.2d 433 (8th Cir. 1983);Anderson v. Alpha Portland Industries, 727 F.2d 177 (8th Cir. 1984). None of these cases addresses the issue of an employer's obligation under a collective bargaining agreement to pay insurance benefits directly to its employees when it has procured a group insurance carrier. Lewis and Robbins concerned the rights of trustees of pension and welfare funds to bring actions against employers as third-party beneficiaries of a collective bargaining agreement. Anderson addressed the issue of whether retired employees were required to exhaust administrative remedies prior to bringing a direct action against an employer. These cases are also inapposite.
The general rule is that when an employer provides group insurance for the benefit of its employees, "the employer does not, by reason of the peculiar position in which he is placed, become a guarantor of the payment of the insurance, nor an insurer." 1 Appleman, Insurance Law and Practice (1981) Sec. 43.25, p. 108. Discussing the employer's liability, Appleman continues:
 So far as direct liability upon the policy of insurance is concerned, he has none, and he is not a proper party in a suit by an employee against the insurer to recover benefits promised therein. If the insurer is liable, the employer is not; and this has been held true even where the insurer is financially unable to discharge its obligations, if the employer used good faith in selection of that company.
(Footnotes omitted). Id., p. 108-09.
This position is supported by a number of cases involving CT Page 2428 issues similar to the one presented by this case. Young v. OakElectro-Netics, 172 N.W.2d 685 (Wis. 1970); Continental InsuranceCompany v. Bussell, 498 P.2d 706 (Alaska (1972); ArrowConstruction Co., Inc. v. Camp, 827 P.2d 378 (Wyo. 1992); see also Consolidated Rail Corporation v. Travelers Ins. Co.,466 N.E.2d 709 (Ind. 1984). For example, in Young v. Oak Electro-Netics,
supra, the plaintiff-employee brought an action for insurance benefits against her employer based upon her employment contract. At the time the plaintiff was hired, she was given a booklet describing her benefits as an employee, which included a statement that the employer "provides free insurance benefits." Id., 686. The plaintiff claimed that the language of the booklet constituted an obligation on the part of the employer to pay the benefits described in the booklet. Id. The court disagreed, noting that the employer "did not promise to insure its employees but to `provide' by way of insurance certain benefits." Id. Citing the Appleman treatise, the court stated that "[w]hile a cause of action for the insurance benefits is vested in the employee it is against the insurance company, not the employer." Id. The court, thus, reversed a judgment entered against the defendant. Id., 688.
In Arrow Construction Co., Inc. v. Camp, supra, 827 P.2d 378, an employer brought an indemnity action against an insurance agent to recover sums it paid to an employee to pay medical bills when the insurance company procured by the agent became insolvent. The court upheld summary judgment for the defendant on the ground that the employer had no legal obligation to pay the medical bills since it had only promised to provide group insurance coverage. Id., 382-83. An indemnity action, therefore, could not lie when there was no underlying legal obligation to the insured party. Id., 382. The court stated that "[a]n employer who acts in good faith to provide health insurance is not liable to the insured for the insurer's failure to pay." Id., 382. The court stated further:
 We believe the Appleman treatise states the correct rule of liability where an employer has agreed to provide insurance for his employee. Arrow [employer] could be liable here only if it failed to exercise good faith in choosing the First Farwest [insurer] policy. The fact that First Farwest eventually may have gone bankrupt does not establish that Arrow acted in bad faith. CT Page 2429
Id., 383.
Additionally, in Continental Insurance Company v. Bussell,
supra, 498 P.2d 706, the court addressed the duty of an employer under a union contract that required him to provide life insurance for his employees while traveling by aircraft on company business. The court held that when an employer "covenanted to procure a life insurance policy for the benefit of his employees he undertook a duty which could only be discharged by the purchase of such a policy." Id., 709. When the employer "in good faith secured an appropriate policy from a life insurance company, he would have complied with his duty under the union contract regardless of the financial ability to pay the beneficiary in accordance with the policy terms." Id., 709. The employer, "under the contract, had no direct obligation to pay" the life insurance benefits as damages. Id., 709.
In this case, the Defendant's obligation under the 1989-92 collective bargaining agreement was to provide group life insurance to teachers at the level stated therein based upon their tenure status. Defendant did not promise to insure its employees "but to `provide' by way of insurance certain benefits." Young v. Oak Elecro-Netics Corp., supra, 172 N.W.2d 686. Defendant fulfilled this obligation by securing Confederation Life Insurance Company as the life insurance carrier for the life insurance benefits described in the collective bargaining agreement. By doing so, the defendant fulfilled its contractual obligation.
This conclusion is implicit in the provision set forth in the group insurance Article of the 1989-92 collective bargaining agreement that "disputes covering payment or non-payment will be taken up directly with the insurance carrier . . ." A similar provision appears in the prior 1987-89 agreement. The aforementioned second issue is answered in the negative.
Judgment shall enter for the Defendant.
DAVID L. FINEBERG Superior Court Judge CT Page 2430